FRANK B. CURTIS, Collector, *vs.* PAUL POTTER.

Piscataquis.    Opinion March 11, 1916.

*Execution and delivery of mortgage of personal property as evidence of title.    Oath of Assessors.    Service of Tax Notice.*
*Tax of Non-resident.*

Action of debt brought by a collector to recover a tax assessed in 1914 by the town of Wellington upon certain lumber alleged to be the property of the defendant, a resident of Worcester, Massachusetts.

Upon defendant's motion for a new trial, and upon exceptions it is held;

1.  That under the evidence the jury were warranted in finding that the defendant was the owner of the property for which he was taxed.

2.  That under the circumstances of this case, a personal demand by the collector upon the defendant prior to bringing the suit was unnecessary. That after sending two tax bills in the ordinary form, a written demand informing the defendant that the tax must be paid at once and if a favorable reply was not received within twelve days the collector would proceed to collect it, was a sufficient compliance with R. S. ch. 10, sec. 27.

3.  That the assessors were legally sworn.  When the record states that the assessors personally appeared before the town clerk and "took oath necessary for them to discharge their duties as assessors for the ensuing year," it is not necessary that the record set forth in exact words the form of oath which was in fact administered.

4.  The warrant to the collector was not invalidated by the mere fact that the words "Actual expense of brown tail moths" were interlined above the total amount of the assessment. ..

Action of debt brought by collector of taxes to recover tax of personal property of a non-resident. Plea, general issue. Verdict for plaintiff. Exceptions to rulings and instructions of presiding Justice and motion for new trial filed by defendant. Motion and exceptions overruled.

Case stated in opinion.

*C. W. Hayes,* for plaintiff.

*J. H. Haley, and J. S. Williams,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, JJ.

CORNISH, J. Action of debt brought by the collector to recover a tax assessed in 1914 by the town of Wellington upon certain lumber alleged to be the property of the defendant, a resident of Worcester, Massachusetts.

The case is before this court on motion and exceptions by the defendant.

1. MOTION.

The motion raises the question of ownership, the defendant contending that the verdict of the jury on this point was clearly wrong.

It appears from the evidence that the defendant, the then owner of the Lawrence lot, so called, in Brighton, on January 1, 1914, conveyed the same to his father, Burton W. Potter. Immediately following this conveyance a logging operation was begun and it continued during the winter season. - The timber cut was sawn by portable mills on the premises and hauled to the Ward field, so called, in the town of Wellington as long as the snow permitted. The balance near the end of the season was delivered at the Decker field in the plantation of Brighton. The hauling to Wellington began early in January and continued to the last of March, and the hauling to the Decker lot was a matter of only a week or ten days. It was all a part of one and the same operation, and in round numbers about nine-tenths of the lumber was delivered in Wellington where it remained on April 1.

To prove title to the lumber in the defendant the plaintiff relied upon a certain mortgage given by the defendant on May 20, 1914, to Everett and Stanhope covering seven hundred thousand feet more or less of hard and soft wood lumber, "being the same lumber

that was cut by the grantees on the Lawrence lot in the plantation of Brighton and now located in the field of Charles Decker in Brighton." This designation of the location was evidently an error, because the portion of the lumber in the Decker field was very small. The quantity called for in the mortgage, seven hundred thousand feet, could only be satisfied by including the Wellington lumber. There is no evidence of any lumber in the Decker field belonging to the defendant other than that which came from this winter's operation, and, as it was a single operation, if the defendant owned the portion in Brighton he also owned the portion in Wellington. Moreover in that mortgage the defendant avouches himself to be the true and lawful owner of the mortgaged property and covenants to warrant and defend the title against the lawful claims and demands of all persons. This mortgage with its declarations and covenants on the part of the defendant stands for its full bigness, and it is significant that the defendant did not take the stand to explain it. This instrument of itself, unexplained, was sufficient warrant for the verdict, it being admitted that there was no change of ownership between April 1, the date of the assessment, and May 20, the date of the mortgage. Obviously the owner of the mortgaged property was the party liable for its taxation.

The defendant relies upon the deed from himself to his father, dated January 1, 1914, conveying the title to this lot. But it is common knowledge that land owners frequently permit, even verbally, lumber to be cut from their land, and the title to such lumber when cut vests in the permittee. It is reasonable to suppose, in view of the mortgage, that such an arrangement was made here between father and son. If not, then it would have been natural and quite necessary for either the defendant to deny such an arrangement and to explain the mortgage, or for the father to also deny it and claim the lumber as his. Neither testified in the case and their silence is significant. Nor did Everett and Stanhope testify, the parties who carried on the operation and received the mortgage from the defendant as security for a debt of $2500. It is safe to assume that they must have satisfied themselves on the point of ownership before they consented to take this security.

The verdict on the evidence was clearly right.

EXCEPTIONS.

Three exceptions were urged in argument and involve certain points which were raised by the defendant in requests for instructions refused by the presiding Justice.

1. Insufficient demand prior to suit.

This tax was assessed under R. S., ch. 9, sec. 13, par. I, as amended by chapter 30 of the Public Laws of 1913. This amendment provides that "Portable mills, logs in any town to be manufactured therein, and all manufactured lumber, excepting lumber in the possession of a transportation company and in transit, shall be taxed in the town where situated on the first day of April in each year."

Prior to 1909 there was no provision for taxing personal property of this class to an owner residing outside the State. It was taxed "to the person having the same in possession" etc. R. S., ch. 9, sec. 13, par. II. But chapter 80 of the Public Laws of 1909 amended paragraph II, so that now "Personal property which . . . on the first day of April is within the State, and owned by persons residing out of the State or by persons unknown, . . . shall be taxed either to the owner, if known, or to the person having the same in possession." . . .

This tax was assessed against the defendant as the owner under this act of 1909.

The authority under which this suit was brought by the collector is found in R. S., ch. 10, sec. 27, viz: "Any collector of taxes . . . may, after demand for payment, sue in his own name for any tax, in an action of debt." . . .

The defendant construes this to mean a personal demand by the collector upon the tax payer, and contends that no other notice will under any circumstances meet the requirements. This court has held that in case of a resident taxpayer a special demand was intended by the Legislature, a demand so formal and explicit that a taxpayer should realize that a suit would follow his noncompliance with the demand. "A written request mailed to the person taxed is not sufficient. It should be a personal demand made by the collector or some authorized agent, unless such a demand be excused by the absence of the debtor from home or by some other good reason." *Parks* v. *Cressey*, 77 Maine, 54. The gist of the court's construction of the statutory requirement is plain. The demand

should be commensurate with the object to be attained and should be of such a character as to fully inform the delinquent of the collector's purpose. It is on this principle that in *Clark V. Gray,* 113 Maine, 443, the court held that the demand preliminary to an arrest, under another section, R. S., ch. 10, sec. 20, should be a personal demand, and that the sending of a mere tax bill in the ordinary form, such as is sent to every taxpayer immediately after the commitment was insufficient. The drastic nature of the remedy proposed required it.

The facts and circumstances of each case must be taken into consideration, and what might be deemed an adequate demand under one state of facts as upon a nonresident might not be under another, as upon a resident. Thus in *Parks* v. *Cressey,* supra, the court expressly said that a personal demand by a collector or his authorized agent "might be excused by the absence of the debtor from home or by some other good reason." Such ground for excuse is proven here. The defendant is a resident of another State. A personal demand upon him by the collector, as collector, would be well nigh impossible. If made, it would contain no official element. The collector's jurisdiction ceases at the line of the State. Under these circumstances to require a personal demand upon the deliquent is in effect to nullify the statute of 1913, authorizing the taxing of personal property to nonresident owners. The Legislature did not change the language of the statute giving the collector authority to bring suits for such taxes in his own name, when it enlarged the realm for which such suit could be brought. It therefore brought the collection of such taxes within the terms of the saving clause in *Parks* v. *Cressey.* Thus applied, the rule is reasonable and workable. The demand made by the collector in this case was ample under the circumstances. He did not rest upon the ordinary tax bill sent in June, 1914, nor upon a second bill sent in August accompanied by a letter requesting payment; but on October 3, he sent the defendant a third tax bill accompanied by a registered letter in which he wrote: "This tax must be paid at once and if I do not get a favorable reply within twelve days shall proceed to collect it." The registry receipt proves that this demand reached the defendant in due course of mail, but he made no reply. Under the statute

and the rule established in this State this was a sufficient preliminary demand on which to base this action of debt. The defendant was seasonably and fully apprised of the action which his neglect or refusal would lead to. To require more than this would prevent the collection of taxes on personal property from nonresidents by suit, and would effectually thwart the legislative intent.

2. Assessors not legally sworn.

The record of the oath is as follows: "Personally appeared John H. Frye, F. C. Pease and Arthur Cross and took oath necessary for them to discharge their duties as assessors for the ensuing year, before me, Max V. Libby, Town Clerk."

The defendant urges that it was the duty of the clerk to set out in totidem verbis the oath which he administered and leave it to the court to say whether or not it was the one required. This position is untenable.

R. S., 1821, chapter 118, sec. 1, to which our attention is called by the defendant, prescribed a form of oath to be administered to each assessor, but no form has been prescribed in any revision since that time. In like manner that first revision recited at length the oath to be administered to a constable, and also that to a collector, R. S., 1821, ch. 116, sec. 25. But those forms have never been repeated in any subsequent revision. The reason perhaps is that the revision of 1841 contained for the first time certain Rules of Construction among them one for the construction of the words "duly sworn" or "sworn according to law," which rule in the present revision is as follows: "The words 'sworn,' 'duly sworn' or 'sworn according to law' used in a statute, record or certificate of the administration of an oath, refer to the oath required by the constitution or laws in the case specified and include every necessary subscription to such oath." R. S., ch. 1, sec. 6, par. XXII. This obviates the necessity of lumbering up records with the full language of all the oaths administered. The word "sworn" implies all the necessary terms. In the case at bar the language was even more specific. The record states that the assessors took the "oath necessary for them to discharge their duties as assessors for the ensuing year." This was obviously all that was required of them or that the record need state. *Green* v. *Lunt,* 58 Maine, 518; *Bowler* v.

*Brown,* 84 Maine, 376; *Mason* v. *Belfast Hotel Co.,* 89 Maine, 384. The cases cited by the defendant are not in conflict with these decisions.

3.  Illegal warrant.

The warrant is in the form prescribed by law and authorizes and requires the collector to levy and collect the whole assessment for State and county taxes, municipal purposes and overlay, amounting to $5593.19, and to pay the same to the town treasurer.  The words "actual expense of brown-tail moths" are interlined above the total.  No sum is carried out.  Towns are authorized to destroy brown-tail moths at the expense of the owners of real estate if such owners fail to take the necessary steps.  Laws of 1905, ch. 29; 1907, ch. 15; 1909, ch. 34; 1911, ch. 84 and ch. 111.  A tax therefor may be levied upon the real estate of such delinquent land owners and may be committed to the collector and collected.

The interlineation of this clause in the warrant was evidently intended to meet this condition.  Whether or not it did meet it as a matter of law is immaterial here.  That question could in no way affect this defendant nor relieve him from paying his just and legal tax upon personal property.  In this form of action, technicalities, which affect neither the substantial rights of the taxpayer, nor the jurisdiction of the assessors, nor essential prerequisites to the bringing of this action, are viewed by the court with scant favor.  *Greenville* v. *Blair,* 104 Maine, 444; *Rockland* v. *Farnsworth,* 111 Maine, 315.

*Motion and exceptions overruled.*